Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6485 | **DATE** | 10/18/2004 |
| **CASE TITLE** | United States ex rel Damen Price vs. Eugene McAdory | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Damen Price's petition for writ of habeas corpus is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | number of notices | Document Number |
| | Notices mailed by judge's staff. | OCT 19 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 17 |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| TH✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES ex rel. DAMEN PRICE (#K52308), | ) ) ) | |
| Petitioner, | ) ) | |
| | ) | 03 C 6485 |
| v. | ) ) | |
| EUGENE McADORY, Warden, Menard Correctional Center, | ) ) ) | |
| Respondent. | ) ) | |

**DOCKETED**
**OCT 1 9 2004**

MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Before this Court is petitioner Damen Price's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). For the reasons discussed below, Price's petition is denied.

I. BACKGROUND

A. Trial Evidence

Petitioner does not challenge the statement of facts set forth in the Illinois Supreme Court opinions affirming the judgments of the trial court, and thus those facts are presumed correct for purposes of the Court's review. *See* 28 U.S.C. § 2254(e)(1); *Ward v. Hinsley*, 377 F.3d 719, 721 (7th Cir. 2004). The Court, therefore, adopts the underlying facts set forth by the Appellate Court of Illinois, First Judicial District, in Petitioner's direct and post-conviction appeals. *See People v. Price*, No. 1-97-3195 (1st Dist. April 5, 1999) (unpublished order); *People v. Price*, No. 00-2838 (1st Dist. July 11, 2002) (unpublished order).

The evidence presented a trial established that on October 9, 1994, a four year old victim was killed in an arson fire at 743 W. 103rd Street in Chicago. The arson involved gang

retaliation. The fire resulted from Molotov cocktails being thrown into the house from an alley adjacent to a gas station parking lot. The victim's cousin was a member of the Gangster Disciples and was the intended victim. Petitioner was a member of a rival street gang. At approximately 2:00 a.m., a group of men, including Petitioner, were in the alley behind the house and threw at least two Molotov cocktails through the kitchen window yelling G.D.K., meaning Gangster Disciple Killer.

### B. Procedural Background

Following a jury trial in the Circuit Court of Cook County, the jury found Petitioner guilty of first degree murder and aggravated arson. The jury also found Petitioner eligible for the death penalty, but determined that the court should not sentence him to death. The Circuit Court thus sentenced Petitioner to consecutive sentences of life imprisonment for first degree murder and a 30-year prison term for aggravated arson.

Petitioner appealed his conviction to the First District Appellate Court of Illinois. On appeal, Petitioner raised the following issues: 1) he was denied a fair trial because the prosecutor told the jury that defense counsel did not believe Petitioner's testimony; 2) the court erred in sentencing Petitioner without ordering a pre-sentence report and because the parties did not agree to the imposition of a particular sentence; and 3) the trial court abused its discretion when it sentenced Petitioner to natural life imprisonment because the trial court's sentence was unduly severe. (R. 15-1, Ex. A.) On April 5, 1999, the Illinois Appellate Court, First Judicial District, affirmed the Circuit Court. (*Id.* Ex. C.)

Next, Petitioner filed a petition for leave to appeal to the Illinois Supreme Court. In his petition, he raised the same issues that he presented in his direct appeal to the appellate court.

(*Id.* Ex. D.) On February 2, 2000, the Illinois Supreme Court denied his petition for leave to appeal. (*Id.* Ex. E.)

Petitioner then filed a petition pursuant to the Illinois Post-Conviction Hearing Act alleging that: 1) he received ineffective assistance of trial counsel for failure to file a motion to suppress statements; 2) he received ineffective assistance of trial counsel for failure to adequately investigate the crime scene; 3) he received ineffective assistance of trial counsel for failure to call two individuals as witnesses who gave statements after the State interviewed those witnesses; 4) he received ineffective assistance of trial counsel for failure to object after the trial court allowed co-defendant's statement into evidence; 5) he received ineffective assistance of trial counsel for failure to object when a certain State's witness testified inconsistently from earlier testimony before the grand jury; 6) he was denied a fair trial because the State did not produce a witness to testify that Petitioner actually threw a Molotov cocktail into the house; 7) he was denied a fair trial after the trial court denied his motion for appointment of new counsel; 8) he was denied a fair trial because the court admitted co-defendant's written statement into evidence; 9) he was prejudiced by the State's use of inflammatory remarks; 10) he was prejudiced because the State failed to apprize the trial court that one of its witnesses testified falsely; and 11) he received ineffective assistance of appellate counsel for failure to comply with Supreme Court Rule 341(e)(7). (*Id.* Ex. F). On June 20, 2000, the Circuit Court of Cook County denied Petitioner's post-conviction petition. (*Id.* Ex. F.)

Shortly thereafter, Petitioner appealed the Circuit Court's denial of his post-conviction petition to the Illinois Appellate Court, First Judicial District. He claimed that the trial court erred in summarily dismissing his *pro se* petition because it included a non-frivolous claim of

actual innocence based on an affidavit of his co-defendant, Imani Thomas, and that his trial counsel was ineffective for failing to present evidence that would have discredited the testimony of the eyewitnesses. He also raised a claim based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Finally, Petitioner argued that the enactment of Public Act 83-942, which amended the Illinois Post-Conviction Hearing Act to permit the dismissal of certain petitions prior to the appointment of counsel, violated the single subject rule of the Illinois Constitution. (*Id.* Ex. G.) On July 11, 2002, the Illinois Appellate Court, First Judicial District, affirmed the Circuit Court's summary dismissal of Petitioner's post-conviction petition. (*Id.* Ex. J.) On August 1, 2002, the appellate court denied Petitioner's petition for a rehearing. (*Id.* Ex. L.)

Petitioner then filed a petition for leave to appeal to the Illinois Supreme Court arguing that: 1) his sentence violated *Apprendi*; 2) the post-conviction court erred when it summarily dismissed his *pro se* claims of actual innocence based on his co-defendant's affidavit; and (3) the post-conviction court erred because his post-conviction petition included a non-frivolous claim that trial counsel was ineffective for failing to present impeachment evidence. (*Id.* Ex. M.) On December 5, 2002, the Illinois Supreme Court denied the petition for leave to appeal. (*Id.* Ex. N.)

On February 4, 2003, Petitioner filed a successive post-conviction petition raising the claim of actual innocence. He again included Imani Thomas' affidavit. According to the petition, Petitioner claimed that he misunderstood the law, and thus was unable to adequately raise the claim in his first petition. (*Id.* Ex. O.) On May 20, 2003, the Circuit Court of Cook County dismissed the successive post-conviction petition as procedurally barred and frivolous

4

and without merit. (*Id.* Ex. P.)

Petitioner filed the present petition for habeas corpus with the Court on September 5, 2003. Respondent filed its answer on December 30, 2003, and Petitioner filed his reply in support of his petition for habeas corpus relief on January 20, 2004. Construing his *pro se* habeas petition liberally, *see Calhoun v. DeTella*, 319 F.3d 936, 943 (7th Cir. 2003), Petitioner asserts the following claims: 1) he was denied a fair trial because the prosecutor's closing argument included a remark that defense counsel did not believe the Petitioner's defense; 2) the trial court abused its discretion in sentencing Petitioner to life imprisonment, rather than a term of years; 3) the post-conviction court erred in dismissing Petitioner's claim based on actual innocence where he submitted the affidavit of co-defendant Imani Thomas which stated that Petitioner was not involved in the crime; 4) the post-conviction court erred when it dismissed Petitioner's claim that counsel was ineffective for failing to present impeachment evidence; and 5) Petitioner's sentence was unconstitutional under *Apprendi*.

## II.   LEGAL STANDARDS

### A.   Habeas Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of law clearly established by the Supreme Court. *See Rodriguez v. Chandler*, 382 F.3d 670, 672 (7th Cir. 2004); *see also Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court

confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

Under the "unreasonable application" prong under Section 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams*, 529 U.S. at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *See Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1174, 155 L.Ed.2d 144 (2003) (unreasonable application more than an incorrect or erroneous decision). To be considered "unreasonable" under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (state court decision must be minimally consistent with facts and circumstances of the case).

### B. Procedural Default

A petitioner's failure to present a constitutional claim to the highest state court to which he may appeal it in the manner required by state law results in a procedural default preventing a federal court from deciding the claim on collateral review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). "Fair presentment requires a petitioner to put forward operative facts and controlling legal principles." *Sweeny v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004). Procedural default also occurs where the state court rejects a petitioner's claim based on an independent and adequate state procedural ground. *See Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed 2d 308 (1989) (federal courts cannot review questions of federal law if the state court decision rests on a state procedural ground that is independent of

the federal question and adequate to support the judgment); *see also Conner,* 375 F.3d at 649 (same). Under Illinois law, waiver is an independent and adequate state court ground. *See Gomez v. Jaimet,* 350 F.3d 673, 677 (7th Cir. 2003).

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law, or by showing that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). A fundamental miscarriage of justice is limited to "the extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

### III. DISCUSSION

#### A. Fair Trial Claim

Petitioner's first habeas claim is that he was denied a fair trial because the prosecutor's closing argument included a remark that defense counsel did not believe in the Petitioner's defense. During the State's cross-examination of the Petitioner, the following colloquy occurred:

Q: Where did you stay then?

A: Here and there.

Q: Where would be "here" and where would be "there"?

A: I don't know the addresses, here and there.

Q: Do you know the area?

A: Yes.

Q: Where?

> A: In my neighborhood.
>
> Q: Who would you stay with?
>
> A: Different people.
>
> Q: Like who?
>
> A: Moe, Larry, Curly Joe.

Apparently, Petitioner's answer caused people in the courtroom to laugh and the court admonished Petitioner's counsel to control herself. During defense counsel's closing argument, she briefly mentioned the colloquy and gave reasons for Petitioner's answer. The State's rebuttal closing argument included the following:

> When counsel got up here and talked to you for I don't know how long, about how much time did she spend on his testimony? How much did she really reflect or tell you about the evidence concerning his testimony? She even knows it's a joke.

When addressing this issue, the Illinois Appellate Court concluded that Petitioner was not prejudiced by the State's comments. The appellate court based its decision on Illinois case law which holds that because prosecutors are permitted wide latitude in their closing arguments, improper remarks in closing are reversible error only if they result in substantial prejudice or where the statements serve no other purpose except to evidence the defendant's guilt. *See People v. Williams*, 181 Ill.2d 297, 330, 229 Ill.Dec. 898, 692 N.E.2d 1109 (Ill. 1998); *People v. Jackson*, 293 Ill.App.3d 1009, 1016, 228 Ill.Dec. 319, 689 N.E.2d 191 (Ill.App.Ct. 1997). The appellate court concluded that because the jury was present for the entire trial, including the Petitioner's cross-examination where he made the comments, and had the opportunity to view the witnesses and their demeanor, Petitioner was not substantially prejudiced by the State's remarks. *See People v. Price*, No. 1-97-3195, at 6.

The Court concludes that this decision is minimally consistent with the facts and circumstances of this case. *See Conner*, 375 F.3d at 649. Although the Illinois Appellate Court only relied on Illinois case law, under the AEDPA, state courts are not required to cite United States Supreme Court cases or even be aware of such law, as long as neither the reasoning nor the result of the state court decision contradicts clearly established Supreme Court precedent. *See Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002). Here, the Illinois court's reasoning did not contradict clearly established United States Supreme Court precedent. Instead, the Illinois court's conclusion that the State's remarks did not deny Petitioner a fair trial is consistent with *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) ("relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.").

In any event, Petitioner does not explain how or why the Illinois appellate court's decision was contrary to, or an unreasonable application of clearly established Supreme Court law. Instead, he requests a hearing on this claim. Federal habeas courts are not an alternative forum for trying issues and facts that a habeas petitioner did not pursue at the state court level. *See Williams*, 529 U.S. at 437; *Boyko v. Parke*, 259 F.3d 781, 789-90 (7th Cir. 2001) (federal habeas court's ability to hold evidentiary hearing for petitioner to supplement an underdeveloped state court record is "severely circumscribed"). Section 2254(e)(2) provides that, if a factual basis of a claim was not developed in the state court, the federal habeas court "shall not hold an evidentiary hearing" unless the habeas petitioner can show:

(A) the claim relies on –

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously

9

> unavailable; *or*
>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; *and*
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*See* 28 U.S.C. § 2254(e)(2) (emphasis added).

Because Petitioner does not assert that a new rule of constitutional law is implicated under this claim, he must demonstrate that the failure to develop a factual record in the state court was not his fault. *See Williams*, 529 U.S. at 432; *Newell v. Hanks*, 283 F.3d 827, 838 (7th Cir. 2002). Also, Petitioner must point to facts sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would find him guilty of the underlying offense. *See* 28 U.S.C. § 2254(e)(2)(B); *Harris v. McAdory*, 334 F.3d 665, 669-70 (7th Cir. 2003). Because Petitioner has failed to argue any facts that satisfy this strict standard, the Court will not grant his unwarranted request for an evidentiary hearing.

### B. Sentencing Claim

Next, Petitioner contends that the Circuit Court abused its discretion in sentencing him to life imprisonment, rather than a term of years. Construing Petitioner's *pro se* habeas petition liberally, this is an Eighth Amendment claim because he contends that his sentence was unduly severe. *See Henry v. Page*, 223 F.3d 477, 482 (7th Cir. 2000); *see also Solem v. Helm*, 463 U.S. 277, 290-92, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (sentence may violate Eighth Amendment if grossly disproportionate to crime). If the trial court imposes a sentence within the acceptable range established by Illinois law, however, a sentence's severity is not sufficient grounds for federal habeas relief. *See Henry*, 223 F.3d at 482. Thus, the Court turns to the relevant Illinois

statutes.

Under the Illinois statutes pertaining to first degree murder, a court may sentence a defendant to the death penalty, life imprisonment, or a term of years, contingent on mitigating and aggravating factors and other circumstances involved in the commission of the crime. *See People v. Swift*, 202 Ill.2d 378, 388, 269 Ill.Dec. 495, 781 N.E.2d 292 (2002) (citing statutes). Here, the jury concluded that Petitioner was eligible for the death penalty, but decided that he should not be sentenced to death. The trial court consequently sentenced Petitioner to life imprisonment. Not only is life imprisonment within the range established by the Illinois statutes, the Court would be hard-pressed to conclude that life imprisonment is unduly severe given that the jury found Petitioner eligible for the death penalty in the first instance. Accordingly, Petitioner's sentencing claim fails.

### C.     Actual Innocence Claim

Petitioner claims that the post-conviction court erred in dismissing his claim based on actual innocence because he submitted his co-defendant's affidavit which averred that the Petitioner was not involved in the murder and arson. The post-conviction appellate court concluded that despite the fact that Petitioner stapled his co-defendant's affidavit to his post-conviction petition, Petitioner did not raise a claim of actual innocence in his petition. In fact, there was no language in the petition by which the appellate court could infer a claim of actual innocence. Because Petitioner failed to properly raise his actual innocence claim in his post-conviction petition, the appellate court concluded that Petitioner waived this claim. Therefore, this claim is procedurally defaulted because the Illinois appellate court relied upon the independent and adequate state ground of waiver in making its determination. *See Harris v.*

11

*Reed*, 489 U.S. at 263; *Gomez*, 350 F.3d at 677.

The Court's discussion, however, does not end here. Petitioner's claim of actual innocence or the "fundamental miscarriage of justice exception" may be the gateway for this court to review his procedurally defaulted claim. *See Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed. 203 (1993). In other words, Petitioner's claim of actual innocence may provide the mechanism to allow the Court to review his procedurally defaulted claim of actual innocence under Illinois law.[1] Petitioner faces a very high burden in establishing his actual innocence. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327.

Petitioner provides the new evidence of his co-defendant's affidavit as proof of his actual innocence. Thomas' affidavit reads:

> I was present on a 103th and Emerald October 9, 1994. Me, lil Ralph, and some more guys went over there because some folks had shot at lil-Ralph earlier that day. Day-Day [Petitioner] was not there when the shooting happened. He came over after lil-Ralph came back. He got in the car with us because lil-Ralph was supposed to drop him off somewhere. He did not know what we were going to do. When we got out of the cars Day-Day stay back.

Reviewing Petitioner's new evidence in light of the evidence presented at trial, *see id.* at 328, the Court concludes that Petitioner has not met the threshold requirement that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *See id.* at 329 (standard requires district court to make probabilistic decision

---

[1] Although claims of actual innocence are not cognizable on federal habeas review, *see Herrera*, 506 U.S. at 400, actual innocence is recognized as a freestanding claim in Illinois pursuant to the Illinois Constitution. *See People v. Washington*, 171 Ill.2d 475, 489, 216 Ill.Dec. 773, 665 N.E.2d 1330 (Ill. 1996).

about what reasonable, properly instructed jurors would do). There was considerable evidence at trial that placed the Petitioner at the scene of the crime. Indeed, after his arrest Petitioner told the police that he was at the scene of the arson. In addition, one eyewitness saw Petitioner holding a Molotov cocktail, that is, a glass bottle filed with an accelerant with a flaming rag hanging out of it, getting ready to throw it. In other words, Thomas' averment that Petitioner "stay back" is unequivocally refuted by the evidence produced at trial that Petitioner was at the scene of the offense.

Because Petitioner has not made a colorable claim of actual innocence, his claim cannot act as a gateway to a merits determination of any procedurally defaulted claims. *See Herrera*, 506 U.S. at 404.

### D. Ineffective Assistance of Counsel Claims

Next, Petitioner claims that his counsel provided constitutionally ineffective assistance of trial counsel. To establish ineffective assistance of counsel, Petitioner must show: (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 694. If a defendant fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other prong. *See Strickland*, 466 U.S. at 697.

With respect to the first prong, a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and quotations omitted).

13

Under the *Strickland* prejudice prong, Petitioner must establish prejudice by a "reasonable probability." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In the context of Section 2254(d), the bar for determining whether a state court's application of *Strickland* is "unreasonable" is a high one that requires a finding of clear error. *See Murrell v. Frank,* 332 F.3d 1102, 1111-12 (7th Cir. 2003); *see also Holman v. Gilmore,* 126 F.3d 876, 882 (7th Cir. 1997) (because the *Strickland* inquiry is balancing test rather than bright-line rule, only clear error in applying *Strickland* supports writ).

Petitioner contends that he received ineffective assistance of trial counsel because his counsel failed to present evidence that the gas station lights would not have illuminated the area where the arson occurred. Had such evidence been presented, Petitioner contends that the State's witnesses who testified that they saw him with a Molotov cocktail in his hand would have been impeached. Petitioner supports his claim with various photographs showing the position of the gas station lights and by the affidavit of Andre Gross, Jr., who stated: I used to live in the area at 103rd and Emerald.... I have been around and in [the] house and the lights from the gas station do no shine over into [its] backyard."

The post-conviction appellate court first noted that many of the photographs were not part of the record on appeal, and thus by law, the appellate court indulged every reasonable presumption in favor of the judgment, including the presumption that the trial court ruled correctly. *See People v. Price,* No. 00-2838, at 7. The appellate court discussed the post-conviction trial court's reasoning that Petitioner had failed to demonstrate that a reasonable probability existed that the outcome of the trial would have been different had counsel

14

photographed the crime area. In essence, the appellate court deferred to the trial court's conclusion that counsel's failure to provide photographs of the surrounding area did not fulfill the *Strickland* prejudice prong. *See id.* at 7-8.

Next, the post-conviction appellate court assumed the information as provided in the affidavit as true, yet concluded that it was insufficient to support a claim of ineffective assistance of counsel because the affidavit was provided five years after the date of the offense, and it did not support that fact that the lights from the gas station did not illuminate the house's backyard, let alone on the night of the offense. *Id.* at 8. Accordingly, the appellate court concluded that the Petitioner failed to demonstrate that counsel's decision not to present evidence regarding the lighting on the night in question was anything other than sound trial strategy. *See id.*

This Court concludes that the Illinois appellate court's decision is minimally consistent with the facts and circumstances of this case, and thus a reasonable application of *Strickland*. *See Conner*, 375 F.3d at 649. First, the appellate court concluded that the outcome of the trial would not have been different had the photographs been submitted into evidence and Petitioner provides no argument as to why he was prejudiced by counsel's failure to provide the photographs. Second, the appellate court concluded that Petitioner did not overcome the presumption that counsel's actions constituted sound trial strategy. *See Strickland*, 466 U.S. at 689. Petitioner makes no cogent argument as top why counsel's conduct fell below an objective standard of reasonableness. Instead, he contends that the photographs were readily available and that counsel fell short of his responsibilities because the State presented witnesses who identified him due to the illumination by the gas station lights. Without more, Petitioner has failed to establish that the appellate court unreasonably applied *Strickland* to the facts of his case. *See*

15

*Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2003) (petitioner has burden in establishing state court applied facts of case in an objectively unreasonable manner); *Lechner v. Frank,* 341 F.3d 635, 638 (7th Cir. 2003) (habeas petitioner bears burden of showing state court rejected constitutional challenges in manner that was "unreasonable application of" or "contrary to" clearly established Supreme Court law).

In sum, because the *Strickland* inquiry is a balancing test rather than a bright-line rule and the Court concludes that there was no clear error, Petitioner's ineffective assistance of trial counsel claim fails. *See Holman,* 126 F.3d at 882.

### E. Apprendi Claim

Last, Petitioner argues that his sentence of life imprisonment violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L Ed. 2d 435 (2000). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The Supreme Court decided *Apprendi* after Petitioner's sentence became final. Because *Apprendi* does not apply retroactively in a collateral proceeding, Petitioner's request for habeas relief based on *Apprendi* is denied. *See Lambert v. McBride,* 365 F.3d 557, 562 (7th Cir. 2004) citing *Curtis v. United States*, 294 F.3d 841, 844 (2002), *cert. denied,* 537 U.S. 976, 123 S.Ct. 451, 154 L.Ed.2d. 334 (2002) (*Apprendi* "does not disturb sentences that became final before June 26, 2000, the date of its release.").

## CONCLUSION

For these reasons, Petitioner's petition for a writ of habeas corpus is denied.

Dated: October 18, 2004.                    ENTERED

                                            _____
                                            AMY J. ST. EVE
                                            United States District Judge